# Exhibit A

Electronically FILED by Superior Court of California, County of Los Angeles on 09/21/2021 09:44 AM Sherri R. Carter, Executive Officer/Clerk of Court, by V. Delgadillo,Deputy Clerk

21STCP02990

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CITY CLERK'S OFFICE
MANHATTAN BEACH CA
2021 SEP 27 PM 1:

RECEIVED

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CITY OF MANHATTAN BEACH; BRUCE MOE, in his official capacity as
City Manager; and DOES 1 through 25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DARYN DRUM

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site *(www.lawhelpcalifornia.org)*, the California Courts Online Self-Help Center *(www.courtinfo.ca.gov/selfhelp)*, or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER
*(Número del Caso):*
21STCP02990

Stanley Mosk Courthouse
111 N. Hill Street
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel R. Shinoff, Esq; Maurice A. Bumbu, Esq. 99129; 325343 Artiano Shinoff
3636 Fourth Avenue, Suite 200
San Diego, CA 92103

Sherri R. Carter Executive Officer / Clerk of Court

DATE: 09/21/2021
*(Fecha)*

Clerk, by
*(Secretario)*

V. Delgadillo , Deputy
*(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* City of Manhattan Beach
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☑ other *(specify):* 416.50 for public entity
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

CEB® Essential Forms™
ceb.com

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Drum, Daryn

Electronically FILED by Superior Court of California, County of Los Angeles on 09/10/2021 02:39 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez, Deputy Clerk

1   ARTIANO SHINOFF
    Daniel R. Shinoff, Esq. (SBN 99129)
2   dshinoff@as7law.com
    Maurice A. Bumbu, Esq. (SBN 325343)
3   mbumbu@as7law.com
    3636 Fourth Ave, Suite 200
4   San Diego, California  92103
    Telephone: 619-232-3122
5   Facsimile: 619-232-3264

6   Attorney for Plaintiff/Petitioner
    DARYN DRUM

7

8               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9           **FOR THE COUNTY OF LOS ANGELES - CENTRAL DISTRICT**

10

11  DARYN DRUM,                            Case No.:   21STCP02990

12              Plaintiff,                 **PETITION FOR ADMINISTRATIVE**
                                           **MANDAMUS (CODE CIV. PROC.**
13      v.                                 **§§ 1094.5 and 1085) AND COMPLAINT**
                                           **FOR:**
14  CITY OF MANHATTAN BEACH; BRUCE
    MOE, in his official capacity as City Manager,   **WHISTLEBLOWER RETALIATION IN**
15  and DOES 1 through 25, inclusive,      **VIOLATION OF LABOR CODE § 1102.5**

16              Defendants.                **WRONGFUL        TERMINATION      IN**
                                           **VIOLATION OF PUBLIC POLICY**
17

18                                         **VIOLATION OF THE FIREFIGHTER BILL**
                                           **OF RIGHTS, GOV. CODE § 3250 ET SEQ.**
19
                                           **VIOLATION   OF    THE    RIGHT   TO**
20                                         **FREEDOM  OF  SPEECH,  CAL.  CONST.,**
                                           **ART. I, SEC. 2 AND U.S. CONST., AMEND.**
21                                         **I**

22                                         **INTENTIONAL        INFLICTION     OF**
                                           **EMOTIONAL DISTRESS**
23

24                                         **DECLARATORY AND**
                                           **INJUNCTIVE RELIEF**
25
                                                    **IMAGED FILE**
26

27  ///

28  ///

                                    1

                    Petition for Administrative Mandamus and Complaint

Plaintiff, Daryn Drum, hereby alleges and prays as follows:

**PARTIES**

1.  Plaintiff Daryn Drum ("Drum") is, and at all times mentioned herein was, a resident of the County of Los Angeles, California.

2.  Defendant City of Manhattan Beach ("City of MB") is, and at all times mentioned herein was, a general-law city in Los Angeles County authorized to operate by the State of California. The City of MB was Drum's employer as defined by Government Code section 12926(d).

3.  Defendant Bruce Moe ("Moe") is, and at all times mentioned herein was, employed by the City of MB as its City Manager, and upon information and belief a resident of Los Angeles County.

4.  Defendants' place of business is 1400 Highland Ave., Manhattan Beach, CA 90266.

5.  The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 25, inclusive, are currently unknown to Drum, who therefore sues Defendants by such fictitious names under Code of Civil Procedure section 474. Drum is informed and believes and thereon alleges that each Defendant designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Drum will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

**JURISDICTION AND VENUE**

6.  This Court has subject matter jurisdiction over the Petition for Administrative Mandamus and each of the Complaint's causes of action by virtue of the fact that this is a civil action in which the matter in controversy exceeds $25,000 and because each cause of action and the circumstances warranting writ of mandamus arise under the laws of the State of California and are subject to adjudication in the courts of the State of California.

7.  This Court has personal jurisdiction over City of MB because it is a city operating within Los Angeles County, California. This Court has personal jurisdiction over Moe because he is an employee of the City of MB who upon information and belief lives in Los Angeles County, California.

///

2

Petition for Administrative Mandamus and Complaint

ARTIANO SHINOFF

8. Venue is proper in this Court because the causes of action and circumstances warranting writ of mandamus arose in Los Angeles County, and the parties are located within Los Angeles County.

## EXHAUSTION OF REMEDIES

9. Drum has exhausted all administrative remedies available to him prior to filing the instant Complaint and Petition for Writ of Mandamus. Drum files the instant Petition for Writ of Mandamus and Complaint in order to exhaust the sole judicial remedy available to him, as there is no other adequate remedy available to him at law.

## GENERAL ALLEGATIONS

10. In April 2019, Drum, a thirty-year veteran of emergency services, entered into an employment agreement with the City of MB to serve as Chief of its Fire Department. Drum, currently aged 56 years old, was honored to have been chosen for this important leadership position, and fully intended on finishing his career with the City of MB.

11. As Fire Chief, the safety of all citizens and inhabitants of the City of MB was Drum's constant, paramount concern.

12. Pursuant to the employment contract between Drum and the City of MB, Drum possessed the duty and authority to exercise the full powers of the Fire Chief Classification as set forth in the job specification for the position.

13. Pursuant to the job specification for the Fire Chief position, the Fire Chief: "directs, plans, organizes, budgets, and controls the programs and services of the Fire Department, including fire prevention and safety inspections, suppression, medical rescue, emergency planning, training and development, and administration; directs departmental staffing, budgeting, and capital improvement project planning; instills ethical decision-making, public responsiveness, and innovation in the delivery of services; participates as a member of the Executive Management Team; and performs other related duties as assigned."

14. Pursuant to the job specification for the Fire Chief position, Drum's duties included evaluating the effectiveness of Fire Department operations.

///

3

AS7 Law San Diego/002155/000001/PL/S0500731.DOCX

15. As Fire Chief, Drum reported directly to City Manager Moe, who was his direct supervisor.

16. Drum had weekly one-one-meetings with Moe to keep Moe apprised of issues relating to the Fire Department.

17. As Fire Chief, Drum received a multitude of compliments and commendations for his work performance.

18. Technology plays an ever-increasingly important role in emergency services and Computer Aided Dispatch (CAD) systems are the backbone of the modern dispatch process. After a call is reported through the 911 call center, incident information is entered into the CAD system, which initiates a particular dispatch response based on various factors including incident location, location of assets and type of call. The CAD system is the critical first step in initiating the dispatch of emergency resources to an emergency incident.

19. Upon being hired as Fire Chief, Drum began to familiarize himself with all aspects of the City of MB Fire Department. Drum quickly realized that one aspect of the Fire Department which required immediate attention was the organization which dispatched Fire Department services for the City of MB.

20. The organization which dispatches Fire Department services for the City of MB is the South Bay Regional Public Communications Authority (SBRPCA), also known as the RCC (Regional Communications Center). The RCC is a publicly owned regional Fire and Police Dispatch center which was formed as a Joint Powers Authority between the cities of Gardena, Hawthorne and the City of MB. However, the City of MB is the only city of the three which uses the RCC for fire dispatch services.

21. The Executive Director of the RCC while Drum was Fire Chief was Erick Lee.

22. Shortly after Drum was hired as Fire Chief, he learned that serious, dangerous vulnerabilities existed in the CAD software used by the RCC. Specifically, Drum learned that the CAD system in use at the time was originally placed into service in 2000, almost twenty years before he was hired as Fire Chief.

23. The City of MB's CAD system was so antiquated that the vendor which had created the original CAD system was no longer able to provide ongoing support for the system.

4

ARTIANO SHINOFF

24. The City of MB's CAD system did not even have the ability to properly screen calls to determine the appropriate response for a given situation.

25. Drum also learned that the vendor platform hired to replace that CAD system, Mark 43, had no experience building a Fire/EMS CAD and was years behind in the delivery of its product, which it originally estimated would be ready by September 2017.

26. Additionally, Drum learned that Mark 43 was the lowest bidder for the project; that the City of Hawthorne alone authorized the purchase with Mark 43 and would be the owners of the software; that the Hawthorne Police Chief Michael Ishii was the Project Manager; and that the City of Hawthorne was to receive a percentage of the purchase price for the project.

27. Furthermore, Drum learned that the RCC did not possess an effective backup plan in the event of further delays or failures from Mark 43. This left the RCC and each of its member and contract agencies, including the City of MB, facing the potential collapse of their 911 dispatching services.

28. Due to the CAD system's vulnerabilities, Drum requested a copy of the Emergency Operations Plan for catastrophic failure of the dispatch center. Drum was told that the City of Torrance was the backup dispatch center, but there was no Emergency Plan outlining the specifics or details. When asked for details, Lee acknowledged that the RCC was deficient in developing a backup plan for catastrophic failure.

29. Drum was extremely concerned with Mark 43's ability to deliver a safe, effective, reliable CAD system. On multiple occasions, Drum disclosed his concerns to Moe. Moe indicated to Drum that he shared Drum's concerns and instructed him to keep pushing for a resolution.

30. During a private meeting with Moe in October 2019, Drum once again disclosed his concerns relating to the Mark 43 CAD system build.

31. At Drum's recommendation, Moe requested that the RCC Executive Director Lee serve as project manager instead of Ishii, as the RCC should have been the organization to take responsibility for the project, and this change in leadership was made.

///

///

5

Petition for Administrative Mandamus and Complaint

AS7 Law San Diego/002155/000001/PL/S0500731.DOCX

ARTIANO SHINOFF

32. In the November 2019 RCC Executive and User Committee meeting, Moe questioned Lee and Ishii about the delays and vulnerabilities associated with the project. Both Lee and Ishii were unable to provide explanations or reasonable answers to Drum's concerns.

33. On December 10, 2019, at Moe's direction, Drum attended a meeting with Mark 43 staff at their corporate offices in New York City. Lee and Ishii were also present. Drum reiterated his concerns regarding the lack of progress on the project and the fact that Mark 43 was now twenty-seven months behind on what was originally supposed to be a six-month project. Mark 43 staff admitted that they were ill-equipped and inexperienced with regards to creating a fire dispatch CAD. Drum left the meeting extremely skeptical about Mark 43's ability to complete the project in a reasonable amount of time. Accordingly, Drum continued to stress to Moe that Moe needed to take action to ensure the safety of the citizens of the City of MB.

34. However, throughout January and February 2020, no substantial progress was made. In March 2020, the COVID-19 pandemic created additional, unforeseen challenges that further shifted the City of MB's focus away from the need to secure an effective CAD system.

35. Around this time, Moe informed Drum that there was a concern from at least one member of the City Council that Drum had "gone native," meaning he was overly loyal to the fire union.

36. In May 2020, Drum again met with Lee and asked for an update on the CAD system and whether there was an effective backup plan in place. Lee informed Drum that there was no such "plan B" and Drum accordingly advised that RCC staff begin seeking alternative vendors to establish the CAD system because Mark 43 had completely failed to do so. Lee advised Drum that he was reluctant to dedicate additional resources to develop an alternative plan.

37. Although Moe indicated he shared Drum's concerns about Mark 43, he failed to take meaningful, lasting steps to address them for the safety of the inhabitants of the City of MB. Drum specifically told Moe that the Mark 43 CAD system issue was failing the citizens of the City of MB. Drum had to constantly remind Moe that it was his job to take Drum's concerns about Mark 43 seriously.

38. On June 11, 2020, Drum participated in a podcast with City of MB police chief Abell where he made a comment expressing his support for police and the incredibly difficult job they have

6

in keeping people safe. The comment was: "You're one good shooting away from civil unrest." Drum was using the term "good" to describe something which is "of a noticeably large size or quantity: considerable." (See https://www.merriam-webster.com/dictionary/good.)

39. Neither Abell, Moe, nor any other City of MB official or employee expressed any concern with the comments to Drum following the podcast.

40. In June 2020, Lee advised Drum that Mark 43 had informed him that the CAD system build would be delayed at least another six to nine months. Lee relayed that Mark 43 was willing to offer financial incentives to RCC in order to maintain the business.

41. During the June 16, 2020 RCC meeting, Drum used a popular expression to explain that he would support keeping Mark 43 as the CAD vendor as long as the RCC maintained pressure on Mark 43 to ensure they delivered an effective product in a timely fashion. The comment was: "I'm comfortable continuing to move forward, but not letting our guard down. And pardon my vernacular, but not taking our foot of their throat either…I think your foot needs to be clearly on their throat, and they need to feel it and they need to feel that constant pressure every single day that we mean business."

42. Drum made absolutely no reference to any news topics or incidents involving law enforcement at the meeting. Police chiefs, fire chiefs, and other representatives present at the meeting agreed with the comments and the sentiment he expressed. One individual even be heard saying "I agree" in the audio recording of the meeting.

43. The City of MB failed to undertake an investigation to properly consider the context in which the statements were made.

44. On June 19th, 2020, Drum was instructed to meet with Moe and other City of MB officials. In that meeting, Moe and other City of MB officials pressured Drum to resign. Drum asked for the chance to think about this difficult, important decision and speak to his family about it over the weekend, but he was not allowed to do so.

45. After pressuring Drum to resign, Moe told Drum that he was terminating his employment contract with the City of MB. No City of MB officials gave Drum prior notice that he was going to be reprimanded for his comments, let alone terminated.

7

ARTIANO SHINOFF

46. The stated reason for Drum's termination was a difference in "management styles" in addition to these two comments.

47. Moe made this decision without affording Drum even a minimal level of due process, civility, or professionalism by meeting with him to discuss any concerns he may have had with these comments beforehand.

48. To add insult to injury, the City of MB published a press release in which it included links to audio files containing the comments taken completely and purposely out of context.

49. Moe was quoted in the press release as saying, "We need thoughtful leaders offering voices that are open and inclusive. Chief Drum's recent comments do not reflect our core values as a City, and an immediate change of Fire Department leadership is in the community's best interests."

50. The clear implication behind Moe's statement published in the City of MB's press release was that Drum is a racist.

51. On April 21, 2021, a hearing on the appeal of Drum's termination was held before hearing officer Tony Butka. The hearing was severely lacking in due process and fundamental fairness.

52. On several occasions, Butka refused to allow counsel for Drum to introduce testimony and evidence regarding the retaliatory nature of his termination.

53. On May 25, 2021, Mr. Butka published his Report and Recommendations in which he recommended that Drum's termination was proper, without even addressing Drum's arguments in opposition.

54. On July 6, 2021, the City Council voted to accept Mr. Butka's recommendation.

55. On July 15, 2021, the City of MB formally notified Drum of the City Council's decision to accept Mr. Butka's recommendation.

56. As a direct result of Moe's and the City Council's decision, the sterling reputation Drum built over the course of 30 years in emergency services was destroyed overnight, which effectively precluded his chances of obtaining alternative employment in his field. Furthermore, he and his family and have been hounded by media and he has suffered severe emotional distress.

///

8

Petition for Administrative Mandamus and Complaint

57. Prior to filing the instant Petition for Writ of Mandamus and Complaint, Drum filed a Claim for Damages to Person with the City of MB, and also received a Right to Sue notice from the Department of Fair Employment and Housing (DFEH), after filing a claim with the DFEH.

**PETITION FOR WRIT OF MANDAMUS**

58. Plaintiff incorporates each allegation contained in this Complaint as though set forth herein in full.

59. Under the California Constitution, a "person may not be deprived of life, liberty, or property without due process of law." Cal. Const. art. I, §§ 7, 15.

60. The City of MB had a duty to treat employees, including Drum, in a nondiscriminatory manner, and in a manner that conforms with fundamental fairness and due process.

61. Drum had a beneficial interest in the City of MB's performance of its duties.

62. The City of MB failed to perform its duty and abused its discretion in the performance of its duty.

63. The City of MB had, and still has, the ability to perform its duty, reinstate Drum, and rectify its grave miscarriage of justice.

64. Drum hereby petitions the court for a writ of mandamus directing the City of MB to vacate the decision of its City Council; ordering Drum's reinstatement as Fire Chief; awarding Drum damages in back pay and emotional distress; and awarding Drum costs of suit and reasonable attorney fees. (Code Civ. Proc., §§ 1085, 1094.5, 1095.)

65. Drum has no further administrative appeal available to him. Having exhausted his administrative remedies, Drum has no speedy, adequate remedy at law available to him to reverse the City Council's decision other than to file the instant Petition.

**COMPLAINT**

**FIRST CAUSE OF ACTION**

**WHISTLEBLOWER RETALIATION IN VIOLATION OF LABOR CODE § 1102.5**

66. Plaintiff incorporates each allegation contained in this Complaint as though set forth herein in full.

9

AS7 Law San Diego/002155/000001/PL/S0500731.DOCX

ARTIANO SHINOFF

67. Whistleblowers are protected from retaliation by law. At all relevant times, Labor Code section 1102.5 prohibited the City of MB from retaliating against any employee, including Drum, for opposing actual or reasonably perceived violations of law, for raising complaints of actual or reasonably perceived violations of law, or for otherwise reporting actual or reasonably perceived improper governmental activities.

68. Labor Code section 1102.5 protects a public employee who reports a suspected violation directly to his public entity employer.

69. Drum disclosed his concerns relating to the CAD system project and the vendor, Mark 43, to his supervisor, Moe, in weekly one-one-meetings, on numerous occasions.

70. Pursuant to the City of MB Municipal Code, Title 2, Chapter 2.04.070, it was Moe's duty to see that all City laws and ordinances were properly enforced.

71. The first duty of government is the protection of its citizens. The City of MB had a duty and responsibility to "establish and improve emergency communication procedures [.]" (Gov. Code, 53100.5(d).)

72. Emergency services are governed by statutes such as the Federal Fire Prevention and Control Act.

73. Drum believed there existed, and disclosed his concerns relating to, conflict-of-interest violations associated with the City of Hawthorne and the Police Chief Ishii's involvement in the project, to Moe. (Government Code, § 1090.)

74. Drum believed there existed, and disclosed his concerns relating to, gift of public funds violations associated with the City of Hawthorne and the Hawthorne Police Chief's involvement in the project, to Moe. Drum also believed there existed and disclosed his concerns relating to gift of public funds violations regarding the Mark 43 project in general and the multiple delays associated with it.

75. Drum reasonably believed the City's failure to secure competent CAD services constituted waste, fraud, and abuse, and repeatedly disclosed his concerns relating to such waste, fraud, abuse to Moe.

///

Petition for Administrative Mandamus and Complaint

AS7 Law San Diego/002155/000001/PL/S0500731.DOCX

76. Drum believed the City's failure to secure competent CAD services constituted a violation of law.

77. Defendants' actions against Drum, as alleged above, constitute unlawful retaliation in employment in violation of Labor Code section 1102.5, because Defendants terminated Drum's employment on account of Drum's disclosure of information to persons with authority over him that Drum had reasonable cause to believe described violations of state or federal law or a violation of or noncompliance with a local, state, or federal rule or regulation.

78. As a direct result of the City of MB's decision to terminate him for disclosing said concerns, the sterling reputation Drum built over the course of 30 years in emergency services was destroyed overnight, which effectively precluded his chances of obtaining alternative employment in his field. Furthermore, Drum and his family were hounded by media and he has suffered severe emotional distress.

79. As a result of Defendants' actions against Drum, Drum has suffered general and special damages in amount according to proof.

## SECOND CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

80. Plaintiff incorporates each allegation contained in this Complaint as though set forth herein in full.

81. The law imposes a duty on all employers to refrain from terminating an employee in violation of public policy.

82. At all relevant times, Defendants were bound by the provisions of FEHA, the Labor Code, and the Firefighters Bill of Rights, and the City of MB Municipal Code.

83. The provisions of law forbid termination in retaliation for an employee engaging in lawful activity.

84. Drum was terminated for an unlawful reason. Additionally, Drum was unfairly pressured to resign prior to his termination, and the appeal of Drum's termination was conducted without fundamental fairness and due process.

Petition for Administrative Mandamus and Complaint

85. As a direct result of the City of MB's decision to terminate him for disclosing his reasonable concerns, the sterling reputation Drum built over the course of 30 years in emergency services was destroyed overnight, which effectively precluded his chances of obtaining alternative employment in his field. Furthermore, Drum and his family were hounded by media and he has suffered severe emotional distress.

86. As a result of Defendants' actions against Drum, Drum has suffered general and special damages in amount according to proof.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE FIREFIGHTER BILL OF RIGHTS, GOV. CODE § 3250 ET SEQ.

87. Plaintiff incorporates each allegation contained in this Complaint as though set forth herein in full.

88. It is unlawful for a public agency such as the City of MB to deny any firefighter the rights and protections of California's Firefighters Procedural Bill Of Rights Act ("Firefighters Bill of Rights"). (Gov. Code, §§ 3250-3262; 53101.)

89. Pursuant to the Firefighters Bill of Rights, "A fire chief shall not be removed by a public agency or appointing authority without providing that person with written notice, the reason or reasons for removal, and an opportunity for administrative appeal." (Gov. Code, § 3254(c).)

90. The Firefighter's Bill of Rights requires that a fire chief be afforded a hearing before being terminated.

91. The hearing which was provided to Drum was woefully lacking any meaningful degree of due process and fundamental fairness.

92. As a direct result of the City of MB's decision to terminate him for disclosing his reasonable concerns, the sterling reputation Drum built over the course of 30 years in emergency services was destroyed overnight, which effectively precluded his chances of obtaining alternative employment in his field. Furthermore, Drum and his family were hounded by media and he has suffered severe emotional distress.

93. As a result of Defendants' actions against Drum, Drum has suffered general and special damages in amount according to proof.

12

94. In doing the acts herein alleged, Defendants acted with the intent to injure Drum. Drum is therefore entitled to a civil penalty of $25,000. (Gov. Code, § 3260.)

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH, CAL. CONST., ART. I, SEC. 2 AND U.S. CONST., AMEND. I

95. Plaintiff incorporates each allegation contained in this Complaint as though set forth herein in full.

96. Under the California Constitution, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech[.]" (Cal. Const., Art I, Sec. 2(a).)

97. Freedom of speech is also protected under the First Amendment to the United States Constitution.

98. Drum was pressured to resign and ultimately terminated for exercising his freedom of speech, speech on an important matter of public concern.

99. As a direct result of the City of MB's decision to terminate him for exercising his freedom of speech, the sterling reputation Drum built over the course of 30 years in emergency services was destroyed overnight, which effectively precluded his chances of obtaining alternative employment in his field. Furthermore, Drum and his family were hounded by media and he has suffered severe emotional distress.

100.   As a result of Defendants' actions against Drum, Drum has suffered general and special damages in amount according to proof.

## FIFTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

101.   Plaintiff incorporates each allegation contained in this Complaint as though set forth herein in full.

102.   Defendants' discriminatory and retaliatory actions against Drum constituted extreme and outrageous misconduct and caused him severe emotional distress. Not only did Defendants unlawfully terminate Drum, they published a press release which included links to the

ARTIANO SHINOFF

13

Petition for Administrative Mandamus and Complaint

comments at issue taken purposefully out of context and a statement from Moe which essentially labeled Drum as a racist.

103.     Defendants knew that retaliating against Drum for disclosing his reasonable concerns about violations of law and for exercising his freedom of speech, including by depriving him of his livelihood and publicly shaming him, would cause Drum extreme hardship and distress. Defendants' actions thus constituted extreme and outrageous conduct.

104.     As a direct result of the City of MB's extreme and outrageous conduct, the sterling reputation Drum built over the course of 30 years in emergency services was destroyed overnight, which effectively precluded his chances of obtaining alternative employment in his field. Furthermore, Drum and his family were hounded by media and he has suffered severe emotional distress.

105.     As a result of Defendants' actions against Drum, Drum has suffered general and special damages in amount according to proof.

### PRAYER FOR RELIEF

106.     WHEREFORE, plaintiff, Daryn Drum, in addition to his Petition for Writ of Mandamus, prays for judgment against defendants as follows:

1. For general and special damages according to proof;

2. For civil penalties, according to proof;

3. For reasonable attorney fees;

4. For costs of suit incurred;

5. For pre-judgment and post-judgment interest on all awarded damages;

6. For such further relief as the Court may deem just and proper;

7. For declaratory and injunctive relief.

Dated: September 10, 2021

ARTIANO SHINOFF

By: _____
    Daniel R. Shinoff
    Maurice A. Bumbu
    Attorney for Petitioner/Plaintiff DARYN DRUM

ARTIANO SHINOFF

14

## VERIFICATION

I am the petitioner and plaintiff in this action. All facts alleged in the above petition and complaint are true of my own personal knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____          9/3/21
Daryn Drum                                Dated

ARTIANO SHINOFF

16

Complaint and Petition for Writ of Mandamus

A37 Law San Diego 002153 000001 PL 8050071.DOCX

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**09/10/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ R. Perez _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCP02990 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | James C. Chalfant | 85 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record          Sherri R. Carter, Executive Officer / Clerk of Court

on 09/10/2021                              By R. Perez                                        , Deputy Clerk
   (Date)

LACIV 190 (Rev 6/18)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
| COURTHOUSE ADDRESS:<br><br>Stanley Mosk Courthouse<br><br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>09/10/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ C. Del Rio _____ Deputy |
| PLAINTIFF(S):<br>Daryn Drum | |
| DEFENDANT(S):<br>City of Manhattan Beach et al | |
| **NOTICE OF TRIAL SETTING CONFERENCE AND ATTACHED**<br>**ORDERS THEREON** | CASE NUMBER:<br>21STCP02990 |

You are hereby notified that the above matter has been set for trial setting conference on ___12/14/2021___
at ___1:30 PM___ in ___Department 85___
of the above-entitled court.

You are ordered to give notice of this hearing and serve a copy of this notice to all parties to the action
within 10 days of service of this notice.


Sherri R. Carter, Executive Officer / Clerk of Court

Date: 09/10/2021                         By, C. Del Rio

                                               Deputy Clerk


**NOTICE OF TRIAL SETTING CONFERENCE AND ATTACHED ORDERS THEREON**

LACIV XXX
LASC Approved 00/00

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>09/10/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ C. Del Rio _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Daryn Drum | |
| DEFENDANT/RESPONDENT:<br>City of Manhattan Beach et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>21STCP02990 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Trial Setting Conference and Attached Orders Thereon upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Daniel Shinoff
Artiano Shinoff
3636 4th Ave. Suite 200
San Diego, CA 92103

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 09/10/2021

By: _C. Del Rio_
Deputy Clerk

**CERTIFICATE OF MAILING**